# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| DON-SURVI CHISOLM, | Civil Action No.: 4:08-cv-3242-RBH-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| CAPT. T.A. VON DORAN; LT. CARMICHAEL; LT. HEYWARD; CPL. WILLIAMS; PFC. GREEN; | |
| Defendants. | |

**I.  INTRODUCTION**

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Dorchester County Detention Center(DCDC). Plaintiff raises numerous constitutional claims under 42 U.S.C. § 1983.

Presently before the Court is Defendants' Motion for Summary Judgment (Document # 23). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the dismissal of his claims. Plaintiff timely filed a Response (Document # 26) to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

II.     FACTS[1]

At the time of the events alleged in the Complaint, Plaintiff was incarcerated at DCDC, in St. George, South Carolina on charges of murder. He was at the DCDC following his extradition from Florida, where he had allegedly fled as a suspect during a pending a murder investigation. He was charged with murder of Craig Michael Canady, Jr., in violation of SC Code §16-3-10, by way of a murder committed on September 13, 2007, in Ridgeville, SC. He was arrested on or about November 12, 2007, and remanded to the DCDC. Van Doran Aff. ¶2. The DCDC was also housing Chisolm's co-Defendant David "Skully" White. Inmates White and Chisolm, as well as a third inmate, Trevee Gethers, made accusations against each other in connection to the murder of Craig Canady, and one (1) other murder. Id. at ¶3.

Due to the connection between these three (3) inmates, they could not be housed in close proximity to one another. Plaintiff was placed in Maximum security, using the risk assessment calculation that is standard for those who have not yet been convicted of a crime. Id. at ¶¶3-4. Von Doran avers Plaintiff was placed in Maximum security for non-punitive reasons. Certain activities or amenities are restricted in maximum security by its very nature. However, all inmates are provided cleaning items, such as brooms, mops, clean mop water, Pine-Sol, disinfectant cleaning solution, Bleach scrub, general purpose cleaner, and a bio-hazard disinfect cleaner, and are allowed to clean their cells on a daily basis. Inmates are not forced to sleep on the floor at the DCDC. Id. at ¶5.

On August 30, 2008, Plaintiff became unruly and aggressive while complaining about his placement in D-pod. He came out of his cell, against instructions. He was told he could not be moved

---

[1]Plaintiff asserts in his Response to Defendants' Motion for Summary Judgment that he does not agree with Defendants' version of the fact, "but in an effort not to waste the court's time with unnecessary paperwork, [he would] respond to these facts." Response at 1.

from D-pod to C-pod due to his co-Defendant being there already. He was placed back into his cell, but then popped open his cell door a second time against instructions. He was told to return to his cell, but disobeyed. He became defensive and challenged PFC Green to put him back in his cell. After several requests, he continued to refuse instructions. In the interest of security and safety, PFC Green used the taser instrument to control the inmate and place him into restraints. Plaintiff was then escorted to medical and checked by the nurse. Id. at ¶9. The inmate was not hurt, but he was seen by medical as a precaution. Id. at ¶11.

Plaintiff prepared a grievance regarding the events of August 30, 2008. He alleges that he was "tased" for no reason by PFC Green, and that Green held the taser instrument on him for fifteen to twenty (15-20) seconds. He claims that he complained that he was feeling sick afterwards, and was essentially ignored. Captain Van Doran responded to Plaintiff's grievance by way of an in-person talk and in writing, and reiterated the DCDC's position regarding his behavior and threats. Id. at ¶11. Following Captain Van Doran's response, the inmate did not attempt to appeal the decision or file another grievance about the same thing. Id.; Grievance Form, August 30, 2008.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming

forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Plaintiff's Allegations

In his Complaint, Plaintiff alleges Defendants violated his constitutional rights by their use of excessive force, their placement of him in the maximum security pod, and by allowing him to be exposed to tuberculosis.

### B. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### C. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing an action concerning conditions of his confinement. 42 U.S.C.1997e(a). Before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief

offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir.2001) (exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

Defendant asserts that Plaintiff has failed to exhaust his administrative remedies on all of his claims except for his excessive force claim. Plaintiff filed a Grievance on August 30, 2008, in which he complained that officers used the taser on him for 15-20 seconds for no reason. Following Captain Van Doran's response, Plaintiff did not attempt to appeal the decision or file another grievance about the same thing. Van Doren Aff. ¶ 11; Grievance Form, August 30, 2008. However, at the time this grievance was submitted, the grievance system at DCDC did not call for an appeal of first grievances. In November, 2008, the grievance system was formalized at the DCDC, calling for grievances to be forwarded up the chain of command. Therefore, Defendants do not dispute that the excessive force claim was exhausted in the August 30, 2008 grievance. However, Defendants assert that Plaintiff has filed only two other grievances, neither of which are relevant to the issues raised in the present case, and thus, Plaintiff has failed to exhaust his administrative remedies on all claims other than the excessive force claim.

Plaintiff asserts that he filed other grievances regarding living conditions and loss of

privileges, but they were "out right ignored or not filed by jail officials." Plaintiff presents no evidence to support this conclusory assertion and, thus, has failed to show that he exhausted his administrative remedies on any claims other than the excessive force claim. Therefore, it is recommended that summary judgment be granted on all claims raised in this action, other than Plaintiff's excessive force claim, for failure to exhaust administrative remedies.

> **D.**     **Legal Analysis Applicable to Pretrial Detainees**

Plaintiff is detained at the DCDC to await the disposition of pending charges. Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of

a facility, it will be upheld. <u>Bell</u>, 441 U.S. at 538.

### E. Excessive Force

Plaintiff alleges in his Complaint that "PFC Green used excessive force on me under the supervision of his floor supervisor Cpl. Williams... I was tazed [sic] in excess of 20 seconds or more even though the regulations state tazing [sic] should be no longer than 5 sec. Witnesses to this event protested to Cpl. Williams about the time length of me being tazed [sic] only to be hushed or ignored." Complaint p. 4.

The incident reports from August 30, 2008 show that inmate Chisolm became "loud and aggressive" and refused to comply when he was asked several times to return to his cell. Incident Report #2513, August 30, 2008; Green Aff. ¶2; Heyward Aff. ¶2; Williams Aff. ¶2. Defendant Green managed to place Chisolm back into his cell with the help of PFC Ezzell, but then Chisolm forced his way out again and was aggressive with the officers. <u>Id.</u> In order to subdue inmate Chisolm and get him into restraints, the taser instrument was used. Reports show Green only applied the taser instrument one time for a total of two cycles, with one air cartridge having been fired. Supervisory Taser® International Use Report, PFC Green; Green Aff. ¶2. Green was at a distance of eight (8) feet from the inmate, and the inmate was not injured. <u>Id.</u>

Following the use of the taser, Plaintiff was escorted to the medical center as a precaution. A report was completed on August 30, 2008, verifying the sequence of events leading to the use of the taser instrument. Use of Force Report, August 30, 2008.

A Fourteenth Amendment claim of excessive force exists where the defendant "inflicted unnecessary and wanton pain and suffering" on an arrestee or pretrial detainee, and where the force was applied "maliciously and sadistically for the very purpose of causing harm." <u>Taylor v. McDuffie</u>,

155 F.3d 479, 483 (4th Cir.1998). However, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.1994) ( citing Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Extraordinary circumstances are present when "the force used [is] of a sort repugnant to the conscience of mankind ... or the pain itself [is] such that it can properly be said to constitute more than de minimis injury." Id. at 1263 n. 4 (internal citations and quotation marks omitted).

Plaintiff fails to present evidence to support his allegations. Even assuming Defendant Green used the taser on Plaintiff for 15-20 seconds as alleged, Plaintiff has failed to establish that his injuries were more than de minimis. Plaintiff accordingly has failed to establish injury sufficient to satisfy a constitutional threshold. Accordingly, summary judgment is appropriate Plaintiff's excessive force claim.

Because Plaintiff has failed to establish his excessive force claim and has failed to exhaust his administrative remedies as to all other claims, it is recommended that Defendant's Motion for Summary Judgment be granted and this case be dismissed. However, should the district judge determine that Plaintiff has exhausted his administrative remedies with respect to the other claims, they are discussed below.

### F.     Conditions of Confinement

Plaintiff complains that he was placed in maximum security and stripped of privileges even though he is only a pretrial detainee and has not been convicted of the charge for which he is confined. He asserts that the pod in which he was placed is used as a punishment pod. He complains that he had to sleep on the floor and that he was not allowed to clean his cell. He also complains that

he was on lockdown 23 hours a day and was not able to get the exercise he needed.

Captain Van Doran verifies that all inmates are provided with cleaning items, such as brooms, mops, clean mop water, Pine-Sol, disinfectant cleaning solution, Bleach scrub, general purpose cleaner, and a bio-hazard disinfect cleaner, and are allowed to clean their cells on a daily basis. Van Doran Aff. ¶5. Furthermore, he knows of no inmate who has had to sleep on the floor during his tenure there. Id. at ¶5.

In addition, Captain Van Doran explains that the DCDC has legitimate non-punitive reasons for the ways in which the inmates are separated and housed at the institution. Captain Van Doran explains, "At Dorchester County Detention Center, individuals who have yet to be convicted are housed according to a risk assessment classification plan, and due to building construction to keep co-defendants separate especially during continuing investigations." Van Doran Aff. ¶4. In this case, the DCDC had to house inmate Chisolm and two (2) other murder suspects involving two (2) separate murders. The crimes were under active investigation, and the three (3) inmates were blaming each other for these crimes. It would have been a safety hazard to keep them in the same area. Furthermore, Captain Van Doran states, "inmates are held in segregation to promote safety, security, and organization, but this segregation system is by no means a form of punishment." Id. at ¶6.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n. 16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988)). Prison officials

act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether he was denied the minimal civilized measure of life's necessities, or that Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not shown that he was deprived a "basic need" or that these alleged deprivations were attended by deliberate indifference on the part of Defendants. Furthermore, Defendant has presented a legitimate

non-punitive reason for housing Plaintiff in the particular pod he was housed in. For these reasons, Plaintiff's claims fail as a matter of law and summary judgment is appropriate.

G. **Exposure to Tuberculosis**

Plaintiff alleges that "between June 6th-20th [he] was exposed to T.B. [sic.] in the form of an inmate who was positive for T.B... Jail administration was informed of [the inmate's] status and need to be quarantined by the Health Dept. as well as Southeastern Services group (the on duty nurse)." He claims that his tuberculosis test showed up as "positive" for exposure to tuberculosis after being housed in proximity to an infected inmate. Furthermore, he admits that he was give a chest x-ray, which was normal. Complaint p. 4. Plaintiff fails to present any evidence to support these allegations. Plaintiff does not allege he was damaged through this alleged incident other than by claiming his exposure test was "positive."

The issue for the court when a plaintiff asserts deliberate indifference to a risk of harm is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm...." Ruefly v. Landon, 825 F.2d 792 (4th Cir.1987). The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Plaintiff has failed to present evidence to establish deliberate indifference on the part of

Defendants. Furthermore, Plaintiff has failed to even allege anything other than a de minimis injury. Importantly, Plaintiff alleges only that he was exposed to tuberculosis, not that he contracted tuberculosis. Plaintiff has not alleged that he suffered any resulting problems or long term health effects. The chest x-ray was normal. Thus, Plaintiff's claim of deliberate indifference with respect to the alleged exposure to tuberculosis is without merit.

## V.  CONCLUSION

For the reasons stated above, it is recommended that Defendants' Motion for Summary Judgment (Document # 23) be granted and this case be dismissed in its entirety.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

February 1, 2010
Florence, South Carolina

**The parties are directed to the important notice on the following page.**